# 12-304

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖

STEPHANIE SUTHERLAND, on behalf of herself and all others similarly situated,

*Plaintiff-Appellee,*

—against—

ERNST & YOUNG LLP,

*Defendant-Appellant.*

———————

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
THE HONORABLE KIMBA M. WOOD, DISTRICT JUDGE
CASE NO. 1:108-CV-3332 (KMW)(MHD)

## SUPPLEMENTAL BRIEF FOR PLAINTIFF-APPELLEE

FOLKENFLIK & MCGERITY LLP
MAX FOLKENFLIK
1500 Broadway, 21st Floor
New York, New York 10036
Telephone: (212) 747-0400
Facsimile:  (212) 747-2010

HOFFMAN & LAZEAR
H. TIM HOFFMAN
ARTHUR W. LAZEAR
ROSS L. LIBENSON
180 Grand Avenue, Suite 1550
Oakland, California 94612
Telephone: (510) 763-5700
Facsimile:  (510) 835-1311

*Attorneys for Plaintiff-Appellee,*
*Stephanie Sutherland*

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ..................................................................... 1

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ....................................................5

*American Express Co. v. Italian Colors Rest.*,
   2013 U.S. LEXIS 4700 (June 20, 2013) ...................................................... *passim*

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ............................................................................5

*Brady v. Williams Capital Group*, L.P.,
   14 N.Y.3d 459, 467 (2010).......................................................................2

*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945) .................................................................................3

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984) ...............................................................................11

*Circuit City Stores v. Adams*,
   532 U.S. 105 (2001) .................................................................................9

*CompuCredit Corp. v. Greenwood*,
   132 S. Ct. 665 (2012) .............................................................................10

*Cristofaro v. Lake Shore Cent. Sch. Dist.*,
   2012 U.S. App. LEXIS 6550 (2d Cir. Apr. 2, 2012).............................................2

*D.R. Horton, Inc.* N.L.R.B
   Case No. 12-CA-25764 (Jan. 3, 2012) ......................................................... 10, 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U. S. 20 (1991) .................................................................................6

*Ho v. Ernst & Young, LLP* 2011 U.S. Dist. LEXIS 106658
   (N.D. Cal. Sept. 20, 2011)......................................................................13

*Italian Colors Rest. v. Am. Express Travel Related Servs. Co.*
   *(In re Am. Express Merchs. Litig.*), 667 F.3d 204 (2d Cir. 2012)................. 1, 2, 6

*ITC Ltd. v. Punchgini, Inc.,*
  482 F.3d 135 (2d Cir. 2007) ..................................................................11

*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982) ...................................................................... 10, 12

*La. Stadium & Exposition Dist. v.*
  *Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  626 F.3d 156, 160 (2d Cir. 2010) ........................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ............................................................................5

*Owen v. Bristol Care, Inc.,*
  702 F.3d 1050 (8th Cir. 2013) ............................................................11

*Raniere v. Citigroup Inc.*,
  827 F. Supp. 2d 294 (S.D.N.Y. 2011) .......................................... *passim*

*Sutherland v. Ernst & Young LLP*,
  768 F. Supp. 2d 547 (S.D.N.Y. 2011) ....................................................1

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
  310 F.3d 102 (2d Cir. 2002) ...............................................................12

**Statutes**

Federal Arbitration Act, Section 1, 9 U.S.C. § 1 .................................... 3, 7

Federal Arbitration Act, Section 2, 9 U.S.C. § 2 ..................................    1

Fair Labor Standards Act Section 16(b) 29 U.S.C. § 216(b)............................. 2, 6

Plaintiff-Appellee submits this Supplemental Brief to address the impact on this case of the decision by the United States Supreme Court in *American Express Co. v. Italian Colors Rest.*, 2013 U.S. LEXIS 4700 (June 20, 2013) ("*Amex*"), which reversed this Court's decision in *Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchs. Litig.*), 667 F.3d 204 (2d Cir. 2012) ("*Italian Colors*").

The District Court below ruled that Defendant's motion to compel arbitration should be denied because collective action is barred by the arbitration agreement, and Plaintiff proved, on an uncontested record, that individual arbitration would be economically infeasible.

*Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 552 (S.D.N.Y. 2011). There is no question that the Supreme Court ruling in *Amex* would require reversal of that decision as to the federal statutory claims[1] unless *Amex* is distinguishable or left a question unanswered that is presented in this case. Plaintiff-Appellee respectfully submits that both of those limiting conditions are

---

[1] The decision in the District Court also denied arbitration on state law claims. That correctness or incorrectness of aspect of the District Court's decision was not preserved for appellate review and therefore should not be reversed. *Cristofaro v. Lake Shore Cent. Sch. Dist*., 2012 U.S. App. LEXIS 6550 (2d Cir. Apr. 2, 2012). In all events, the interaction of FAA Section 2 with the New York Court of Appeals decision in *Brady v. Williams Capital Group*, L.P., 14 N.Y.3d 459, 467 (2010) (which establishes a state law "effective vindication" principle) presents unsettled issues of statutory interpretation under the FAA neither addressed nor forclosed by the *Amex* ruling. See, Plaintiff-Appellee's Opening Br. at 38-42**.**

true.

*Amex* is distinguishable on two grounds.  First, *Amex* arose under the antitrust laws, and "the antitrust laws do not 'evinc[e] an intention to preclude a waiver' of class-action procedure.  *Amex*, at 2013 U.S. LEXIS 4700, *9.  By contrast, the Fair Labor Standards Act ("FLSA") under which this case arises, does evince a Congressional determination that collective action under Section 16(b) the statute, 29 U.S.C. § 216(b), is necessary for the enforcement and vindication of the rights established under that law.

Congress intended collective action under the FLSA to serve the important public benefits of statutory enforcement and uniformity of employment payment practices.  It also sought to protect competitors of those who would compete unfairly by underpaying their workers.  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945);  *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 314 (S.D.N.Y. 2011).  Those goals cannot be enforced through individual arbitrations alone.  "[W]aiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate."  *Brooklyn Sav. Bank, supra*. at 704.  It would thwart the legislative policy of the FLSA to enforce the collective action waiver here.

Second, unlike *Amex*, the right to collective action for employment claims is not inconsistent with the Federal Arbitration Act ("FAA").  At the time the FLSA

2

was passed in 1938, and when the collective action remedy was amended in 1947, the FAA expressly excluded from scope all employment agreements that were then subject to federal law.[2]  *See also,* 7-8 *infra*.

The question left unanswered in the *Amex* Majority Opinion, and one which could provide the basis of a different result here, is whether an arbitration clause which *mandates* procedures that render an arbitration "prohibitively expensive," falls within the narrow window which *Amex* preserved for the "effective vindication" rule.  Plaintiff-Appellee respectfully suggests that it does.

The arbitration agreement is this case could not be further from the "speedy" "informal" and "streamlined" process envisioned by the FAA and the *Amex* court. Instead, the agreement *mandates* a host of litigation procedures, generally foreign to arbitration—depositions as well as document discovery, summary judgment motions as well as a hearing, to cite a just a few—which make arbitration *under this specific agreement* look far more like litigation than arbitration with the effect, apparently purposeful,  of ensuring that arbitration never occurs.  *See* Plaintiff-Appellee's Opening Br. At 13-14.

One would expect that in litigating over the question of whether arbitration was "prohibitively expensive," as Ernst & Young did below, the most compelling

---

[2]  Section 1 of the FAA, contains an exception for contracts of employment which states:  "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.

contrary proof would be to demonstrate conclusively the falsity of Plaintiff's premise by pointing to arbitrations which had been pursued.  Yet despite the existence of literally tens of thousands of employees of Ernst & Young who have had serious claims that they were denied statutorily guaranteed overtime payments, there is *no evidence that even one arbitration has ever occurred.*

The Supreme Court described the "effective vindication" exception as having its "origin in the desire to prevent "prospective waiver of a party's right to pursue statutory remedies," *Amex* at 12-13. (citation omitted).  The Court held that prohibited waivers "certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable."  *Id*. at 13.

It is inarguable that *mandated* formal, time consuming and expensive litigation-like procedural requirements are foreign to the arbitration process.  As the Supreme Court has repeatedly held:  "The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute. … And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011), *citing*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 269 (2009) and *Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

While the Supreme Court held in *Amex* that arbitration would not be denied merely because a case was of such low value that it could not be effectively pursued, that is a far cry from an arbitration agreement such as this one, *which is designed* to impose *mandatory* litigation procedures that *require* prohibitive costs in the same way as do prohibitive filing and administrative fees.[3]

Separate and apart from the main issue on appeal, Plaintiff-Appellee raised several adequate alternative grounds for affirmance that are untouched by the decision in *Amex*.  Plaintiff-Appellee argued in Point III of her brief that the FLSA creates a legal right to collective action.  That issue is currently before this Court in *Raniere v. Citigroup Inc*., Second Circuit Docket No. 11-5213.  The Amex decision did not address this issue, although the Supreme Court did refer to *Gilmer v. Interstate/Johnson Lane Corp*., 500 U. S. 20 (1991)  as a case where the Court "had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions."  *Amex*  ___U.S. at ____, 2013 U.S. LEXIS 4700 at 15-16.

That *dicta* does not foreordain the result here or in *Raniere* because although

---

[3] Concededly, Justice Kagen's Minority Opinion suggests that she reads the *Amex* Majority to foreclose such a view, but that issue deserves clarity and merits an opinion from this Court.

the Age Discrimination in Employment Act ("ADEA") at issue in *Gilmer* incorporated the language concerning collective action from Section 16(b) of the FLSA, the legislative history of the FLSA, and, indeed, the history of labor legislation leading up to the FLSA, is far more compelling evidence of Congress' determination of the critical importance of collective action to resolve employment disputes such as the one here at issue.

Further, and Plaintiff-Appellee respectfully believes was overlooked by the Supreme Court, *Gilmer* was an individual case and not a putative class action. The plaintiff in *Gilmer* made the argument that because class actions were not available in arbitration (and there were substantial doubts about the accuracy of that assertion), the agreement was entirely unenforceable and he should not be compelled to pursue his *individual claim* in arbitration rather than pursuing his *individual claim* in Court. The Court in *Gilmer* was not called upon to, and did not, "enforce" a class action waiver. It merely enforced individual arbitration. That is why the *Gilmer* Court held that the collective action right in Section 216(b) of the FLSA did "not mean that individual attempts at conciliation were intended to be barred." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U. S. at 32.

Neither *Gilmer* nor *Amex* undermine the arguments raised in Point III of Plaintiff-Appellee's brief and in the *Raniere* appeal.

At the argument on the *Raniere* appeal, Judges Straub and Carbanes

6

questioned where in the statutory language or legislative history of the FLSA was there a showing of a "right" to collective action.  As Plaintiff-Appellee pointed out in her brief, the statements of Congressman Keller, one of the managers on the part of the House on the Conference Committee which reported out the Act in final form, provide such a showing.  *See*, Plaintiff-Appellee's Brief at 44-45.  But more than that, the entire history of labor legislation, and, indeed, the labor movement that led to the passage of that legislation, is animated by the central guiding principle that the right of workers to act collectively may not be infringed.  *See, id*. at 47-49.

This and other aspects of the legislative history evidence, in the words of Judge Sweet, "Congress' precise determination of how th[e] balance should be struck [regarding collective actions] in order to ensure the [FLSA's] remedial and deterrent functions."  *Raniere v. Citigroup Inc*., *supra.* at 314.

Moreover, as mentioned above, when the FLSA was passed there was a statutory exclusion of the right to compel arbitration of specified contracts of employment under the FAA.  9 U.S.C. § 1.  At the time the FAA was passed in 1925, those "excepted" "contracts of employment" included every "contract of employment" which could have been covered by the FAA had the exception not existed.  *See, also*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U. S. at 36-43. (Stevens, J. joined by Marshall, J. dissenting).

7

It was not until 2001 that it was established that contracts of employment not involving those expressly excluded by Section 1 were covered by the FAA. *Circuit City Stores v. Adams*, 532 U.S. 105, 119 (2001),

Thus, when Congress passed the FLSA in 1938, and amended it in 1947, there was no need to have a "express congressional command" to exclude application of the FAA as required by *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012). The FAA itself provided the exclusion.

A second separate and independently sufficient ground for affirming the decision below, as argued by Plaintiff-Appellee in Point IV of her brief, and unaffected by the decision in *Amex*, is that the agreement in question is unlawful under Section 7 of the National Labor Relations Act ("NLRA"), and therefore not enforceable under *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982), as well as unenforceable under Section 3 of the Norris-LaGuardia Act. 29 U.S.C. § 103. The National Labor Relations Board so found in *D.R. Horton, Inc.* N.L.R.B Case No. 12-CA-25764 (Jan. 3, 2012).

The *D.R. Horton* decision, at least with respect to the NLRA, is required to be afforded deference under this Court's decision in *ITC Ltd. v. Punchgini, Inc.,* 482 F.3d 135, 159 (2d Cir. 2007) and *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 844 (1984). *See*, *Owen v. Bristol Care, Inc.,* 702 F.3d 1050, 1054 (8th Cir. 2013). ("The Board's construction of the [NLRA] is entitled to considerable

deference and must be upheld if it is reasonable and consistent with the policies of the Act.").

*Owen* distinguished the arbitration agreement at issue there from *D.R. Horton* because it did not bar *all* collective action. *Id*. at 1053-54. However, as Plaintiff-Appellee pointed out in her Rule 28j letter to the Court dated March 12, 2013 [Docket No. 208], that distinction is unavailable to the Defendant-Appellant here because the arbitration agreement here requires individual arbitration only, and prohibits seeking monetary relief "through any other means." *See* EY Arbitration Agreement Sec. II. B.1., JA.47, Sec.V. D. JA 53.[4]

Finally, as a further independently sufficient adequate alternative ground, and also one unaffected by the decision in *Amex*, Plaintiff-Appellee argued in Point III B. of her Brief that Defendant-Appellant waived the right to proceed in arbitration by not asserting the arbitration defense in its Answer, and by intentionally waiting to see how the District Court proceedings were going before choosing between arbitration and litigation. *See, La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 160 (2d Cir. 2010) ("[A] litigant is not entitled to use arbitration as a means of aborting a suit that did

---

[4] In all events, the *Owen* Court's application of such limited deference is narrower than what is required under this Court's binding precedents or the Supreme Court holdings in *Chevron* and its progeny. As also pointed out in our March 12 Rule 28j letter, to which we respectfully refer the Court, the *Owen* Court's analysis is flawed, and it failed to apply the rule of *Kaiser Steel*, which it did not even refer to.

9

not proceed as planned in the District Court.").  As this Court has held, "[N]ot pleading arbitration in the answer can be used as evidence towards finding of waiver." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002)(citation omitted).

The failure to plead arbitration as an affirmative defense is particularly strong evidence of waiver here, where Defendant had pursued in parallel litigation in the Northern District of California over essentially the same issues presented here.  The District Court in that case found that the right to compel arbitration was intentionally waived in that case and in two later consolidated actions. *Ho v. Ernst & Young, LLP* 2011 U.S. Dist. LEXIS 106658 (N.D. Cal. Sept. 20, 2011).

This Defendant also has been found to have sought to use a late assertion of a right to compel arbitration as a tactical ploy in another case. *See, Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) (Ernst & Young participated in confirmation of bankruptcy plan then sought arbitration of claim.)

Dated:  New York, New York
　　　　June 28, 2013

                                    Respectfully Submitted,

                                    **FOLKENFLIK & MCGERITY LLP**

                                    By:/s/ Max Folkenflik
                                    　　　Max Folkenflik
                                    1500 Broadway, 21st Floor
                                    New York, New York 10036
                                    (212) 757-0400

*Attorneys for Plaintiff-Appellee*

11

[F.R.A.P. 32(a)(7)(C) and Circuit Rule 32-1]

I certify pursuant to Fed. R. App. P. 32 (a)(7)(C) that the attached Appellee's Answering Brief is in compliance with the typeface of Rule 32(a)(5) and Rule 32(a)(b) and uses and proportionately spaced type face of 14 points or more and in compliance with Rule 32(a)(7) contains 2,915 words.

New York, New York
     June 28, 2013

           Respectfully Submitted,

           **FOLKENFLIK & MCGERITY LLP**

           By:/s/Max Folkenflik_____
               Max Folkenflik
           1500 Broadway, 21st Floor
           New York, New York 10036
           (212) 757-0400
           *Attorneys for Plaintiff-Appellee*

12

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellee's Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on June 28, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/Max Folkenflik
Max Folkenflik